ISAAC G. JOHNSON & Co., Respondent, *v.* ELIZABETH J. COX et al., Appellants, Impleaded with Another.

Streets and highways — when public street, actually opened and in use, deemed to be closed under ordinance opening new street in place thereof — when easement in old street not extinguished by opening of new street.

The intent of section 2 of chapter 1006 of the Laws of 1895, which provides for closing streets in certain cities, is that a street actually open and in public use shall so continue until the new street which is to take its place shall be physically opened and capable of such use; hence, owners of a street or roadbed in a city, where such statute is in force, may be restrained from closing or fencing the street or roadbed in front of their premises until such time as a new street shall be opened to take its place.

The premises of the parties abut upon a road which has been in use for many years. In a partition deed by their predecessors in title this road was laid out on a map accompanying the deed of the premises, and made a part of it. The road was used by the tenants in common of the property prior to the partition deed and subsequent to the deed has been so used by their successors in interest. *Held*, that the plaintiff and the defendants, through their respective predecessors in interest, being

grantees in the same partition deed, each received the grant of a private easement, which can only be acquired by a third party under condemnation proceedings, or a conveyance; that the easement so obtained is not extinguished by the laying out of the new street and the discontinuing the old one, and that one of the owners under the partition deed is entitled to enjoin other owners taking title thereby from inclosing or fencing in the land which forms a part of such roadbed in front of their property.

*Johnson & Co.* v. *Cox*, 124 App. Div. 924, affirmed.

(Argued June 17, 1909; decided October 19, 1909.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 5, 1908, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Philo P. Safford* for appellants. The findings of fact present a case which comes exactly under the operation of the statute providing for discontinuing and closing streets, avenues, roads, highways, alleys, lanes and thoroughfares in cities of more than 1,250,000 inhabitants. (L. 1895, ch. 1006.) The meaning of " opened " in the statute must be taken in its technical sense. (*M. E. Co.* v. *Newton,* 21 N. Y. S. R. 73 ; *Matter of Mayor, etc., of N. Y.,* 166 N. Y. 495 ; *Matter of Mayor, etc.,* 95 App. Div. 533 ; 119 App. Div. 882.) The public easement in Old Kingsbridge road merged and consequently extinguished any private easement that may have been possessed by the plaintiff. (*Bailey* v. *Culver,* 84 Mo. 531 ; *Kimball* v. *City of Kenosha,* 4 Wis. 336 ; *Mercer* v. *P. F. W. & C. R. R. Co.,* 36 Penn. St. 99 ; *Leonard* v. *Adams,* 119 Mass. 366 ; *Webster* v. *City of Lowell,* 142 Mass. 324.)

*John J. McKelvey* for respondent. The easement which the respondent, Isaac G. Johnson & Co., has in and over Old Kingsbridge road is a private right and must be distinguished from the public rights incident to every abutting owner on a highway. (*Child* v. *Chappell,* 9 N. Y. 246 ; *Lampman* v.

*Milks,* 21 N. Y. 505; *Story* v. *N. Y. E. R. R. Co.,* 90 N. Y. 122; *A. B. N. Co.* v. *N. Y. E. R. R. Co.,* 129 N. Y. 271; *Holloway* v. *Southmayd,* 139 N. Y. 390.) The Laws of 1895, chapter 1006, cannot be construed so as to extinguish the rights and easements that the respondent has in and over Old Kingsbridge road. (L. 1867, ch. 697, § 1; *Holloway* v. *Southmayd,* 139 N. Y. 390; *Matter of Board of Education,* 24 App. Div. 117; *Matter of Mayor, etc.,* 28 App. Div. 143; *Matter of Mayor, etc.,* 157 N. Y. 409; *Matter of Mayor, etc., of N. Y.,* 56 App. Div. 122; *Matter of Mayor, etc., of N. Y.,* 166 N. Y. 495; *Johnson & Co.* v. *Cox,* 42 Misc. Rep. 301; *Matter of Mayor, etc.,* 95 App. Div. 533; 119 App. Div. 882; 189 N. Y. 551.) The plaintiff is entitled to the relief granted by the injunction because the statute (L. 1895, ch. 1006) does not close Kingsbridge road until Spuyten Duyvil road, the contiguous street, has been actually opened, graded and regulated so that the respondent may use the same as a highway. (L. 1895, ch. 1006, § 2; *Johnson & Co.* v. *Cox,* 42 Misc. Rep. 301; *Matter of City of New York,* 192 N. Y. 459.)

Edward T. Bartlett, J.  The Special Term judgment granted to the plaintiff the following relief:

1. "That the defendants, their agents, etc., be and they hereby are enjoined and restrained from closing the portion of the roadbed of the 'Old Kingsbridge Road' lying in front of the defendants' premises, or from in any way interfering with the use thereof by the plaintiff as a public street or road until the street contiguous thereto, the proceedings for the opening of which are now pending, shall be physically opened and capable of public use." (The Spuyten Duyvil Road.)

2. "That the defendants, their agents, etc., are further restrained and enjoined forever from enclosing, using or occupying the portion of the roadbed of the 'Old Kingsbridge Road' in front of their premises in such a way as to preclude the plaintiff from the exercise of its private easement of right of way adjudged to be appurtenant to the premises belonging to

it, or so as to interfere with the plaintiff's use of the said roadbed by its officers, agents, employees, etc., or by vehicles, conveyances and trucks as may be reasonably necessary to the carrying on of its business."

This appeal is upon the judgment roll, there being no disputed questions of fact.

The plaintiff is a domestic corporation, having its principal office and place of business at Spuyten Duyvil, in the borough of the Bronx, city of New York. It now is and has been since the first day of January, 1903, carrying on a general business, consisting of the manufacture of steel and other metal castings.

The " Old Kingsbridge Road " is a highway leading from the railroad station of the New York Central and Hudson River Railroad Company at Spuyten Duyvil to the street known as West 230th street, at Kingsbridge, and in its course follows the general direction of the Spuyten Duyvil creek. This road has been used as a public highway, as appears from this record, between forty and fifty years, and by general repute it is said to have existed a century or more ; the record does not show the precise time ; it is the road designated in the partition deed to which reference is hereinafter made.

The premises of the plaintiff and of the defendants front and abut upon the " Old Kingsbridge Road," but are not contiguous. Prior to 1865 Isaac G. Johnson, predecessor in title to the plaintiff, and David B. Cox, the predecessor in title to the defendants, with one John C. Cameron, owned in common a large tract of land, of which the premises now owned by the plaintiff, as well as the premises now owned by the defendants, together with the roadbed of the " Old Kingsbridge Road," formed a part. On the 23rd day of August, 1865, a partition deed was executed between Isaac G. Johnson, David B. Cox and John C. Cameron, under which certain portions of the tract above referred to, and including the premises now owned by the plaintiff's predecessors in title, were set off to Isaac G. Johnson, and a certain other portion of the tract, including the premises now belong-

ing to the defendants, was set off to David B. Cox. A map was prepared to accompany this deed, and made a part of it, upon which the portions set off to the respective parties were shown, and the same were bounded and described in the partition deed and shown on the partition map as fronting upon a street previously laid out by the tenants in common as a road for the use of the property so conveyed; the road so laid out prior to the partition deed was used as a road by the tenants in common, and was subsequent to said deed so used, and has been ever since so used, and is now being used as a road by them and their successors in interest. It is found that down to the 18th day of November, 1895, the road known as the " Old Kingsbridge Road " was shown on maps of the street system of the twenty-fourth ward of the city of New York as a road or street in actual physical use and as a part of the street system of said ward and city; that on or about the 18th day of November, 1895, the final map of the twenty-fourth ward, section twenty-two, which embraces all the territory in which the " Old Kingsbridge Road " is located, was filed and thereupon and by virtue of the filing of said map said " Old Kingsbridge Road " as previously shown upon the maps of the street system of the twenty-fourth ward of the city of New York was omitted and a contiguous street laid out, known as the " Spuyten Duyvil Road." It is found as a conclusion of law that the " Old Kingsbridge Road " as shown upon said partition map was and is a street actually open and in public use within the meaning of the terms of section 2, chapter 1006 of the Laws of 1895.

It also appears that proceedings for the opening of a street contiguous to and substantially parallel in certain parts to the " Old Kingsbridge Road," known as the " Spuyten Duyvil Road," were instituted and title became vested in the city of New York on or about the 14th day of January, 1898. The proceedings have been pending ever since and no physical opening of the " Spuyten Duyvil Road " has taken place and it never has been and cannot now be traveled. After this formal opening of the " Spuyten Duyvil Road," the defend-

1909.]    Johnson & Co. *v.* Cox.    **115**

N. Y. Rep.]    Opinion of the Court, per Edward T. Bartlett, J.

ants, as owners of the fee in front of their premises, claimed that this fee was free from the easement of right of way, said to be vested in the plaintiff, upon and over the " Old Kingsbridge Road," and threatened to close up the roadbed in front of defendants' premises by taking possession thereof and fencing the same in for their own uses and purposes ; they also notified the plaintiff in writing of their intention so to do.

The defendants claim the power to so proceed by virtue of the Laws of 1895 (Chap. 1006, § 2), entitled " An act to provide for the discontinuing and closing streets, avenues, roads, highways, alleys, lanes and thoroughfares in cities of more than one million two hundred and fifty thousand inhabitants."

An application was made to the Special Term by the plaintiff for an injunction *pendente lite* restraining the defendants from fencing in the " Old Kingsbridge Road " in front of their premises. This injunction was granted. The right to the preliminary injunction was based upon the provisions of section 2 of the statute already cited which provide, in substance, for the filing of maps, the discontinuance of old streets and the opening of new streets. The section, however, makes an exception to the effect that in all cases where any such street to be closed is, at the time of the filing of such permanent map or plan, actually open and in public use, the same shall so continue until the new street, which is to take its place, shall be opened.

It is to be observed, as appears by the judgment of the Special Term quoted at the opening of this opinion, that the court not only sustained the right of the plaintiff to an injunction until the " Spuyten Duyvil Road " should be physically opened and capable of public use, but dealt with the second and important question, as to the claim of the plaintiff that it is vested with an easement by grant which gives it a distinct right of way out and over the " Old Kingsbridge Road," of which it can be divested only by grant or condemnation ; that this right came to the plaintiff through the partition deed and was not affected by the street opening proceedings, which have for their object the substitution of the " Spuyten Duyvil

Road" for the "Old Kingsbridge Road," when it is opened "and capable of public use."

The question will still remain after the "Spuyten Duyvil Road" shall have been duly opened, as to the right of the defendants to fence in the portion of the "Old Kingsbridge Road" in front of their premises without acquiring, by purchase from the plaintiff, its easement by grant to use that and other portions of the abandoned road.

The court found that the plaintiff has no means of egress or ingress from or to its premises except over the "Old Kingsbridge Road," and that it is essential to the carrying on of its business to have free and unobstructed use of the road in both directions. It is further found that if the defendants are permitted to take possession of the roadbed and fence it in as threatened, the plaintiff will be completely shut off and obstructed from the use of the road in an easterly direction from Kingsbridge, unable to carry on the necessary trucking essential to the conduct of its business, and will have no method of egress from its property in an easterly direction. It is also found that there is no other street or road leading from the plaintiff's premises ·in an easterly direction which is open and available for use except the "Old Kingsbridge Road," and the plaintiff will, if it is closed, suffer irreparable harm and injury, and will be deprived of the enjoyment of the easement of the right of way over the said road which it and its predecessors in title have heretofore enjoyed and which is appurtenant to the premises now owned by the plaintiff. It is further found in this connection that the plaintiff's business consists of the manufacture of steel and other metal castings, which necessarily involves heavy trucking.

The Special Term found as conclusions of law that by virtue of the partition deed the plaintiff is entitled to the easement of the right of way over the fee of the "Old Kingsbridge Road" in front of the defendants' premises; that this easement having been created by grant could not be destroyed by the closing of the street under the provisions of the Laws of 1895 (Chap. 1006); that the "Old Kingsbridge

Road" was and is a street actually open and in public use within the meaning of the terms of the Laws of 1895 (Chap. 1006); that the contiguous street known as the "Spuyten Duyvil Road" has not been opened within the meaning of the law above referred to, and that the defendants were, therefore, not entitled to inclose, use and occupy the fee in front of their premises; that the plaintiff is entitled to the rights of an abutting owner upon a street over the roadbed of the "Old Kingsbridge Road," and is entitled to an injunction restraining the defendants from closing said roadbed in front of their premises until the street contiguous thereto, proceedings for the opening of which are now pending, shall be actually opened and capable of public use; that the plaintiff is further entitled to a permanent injunction forever restraining the defendants from inclosing the roadbed of the "Old Kingsbridge Road" in front of their premises so as to preclude the plaintiff from the exercise of its private easement of right of way claimed by it under the partition deed.

The contention of the defendants appellants is that the findings of fact present a case which comes under the operation of the Laws of 1895 (Chap. 1006), and that the only right the plaintiff had in the "Old Kingsbridge Road" is a public easement which merged and extinguished any private easements that it may have possessed.

There is no finding that the "Old Kingsbridge Road" was ever laid out as a public highway by the city of New York or any competent municipal authority, except that the "Old Kingsbridge Road" was shown, as before stated, on a system of maps made by the city of New York, and that when the subsequent map showing the laying out of the "Spuyten Duyvil Road" was prepared and filed, the "Old Kingsbridge Road" was omitted. This being the situation, it follows that when the city of New York has completed the "Spuyten Duyvil Road" and placed it in a condition suitable for public use, the "Old Kingsbridge Road," the fee of which is vested in the respective abutting owners, would be deemed closed so far as the city of New York is concerned, and thereupon the

roadbed would revert to the owners of the fee, to be dealt with under their respective rights as parties to the partition deed.

The judgment of the Special Term, unanimously affirmed by the Appellate Division, in dealing with one phase of the case enjoins the defendants from closing any portion of the roadbed lying in front of their premises, or from in any way interfering with the use thereof by the plaintiff as a public street or road until the street contiguous thereto, proceedings for the opening of which are now pending, shall be physically opened and capable of public use. This provision of the judgment deals with the public easements in the street and the easements, so called, of light, air and access appurtenant to the premises abutting on the street. (*Matter of Mayor, etc., of N. Y.* [ *Vanderbilt Avenue*], 95 App. Div. 533 ; followed in *Matter of Mayor, etc., of N. Y.* [ *Opening of Vanderbilt Avenue*], 119 App. Div. 882, without opinion ; affirmed, also without opinion, 189 N. Y. 551.)

Under the Laws of 1895 (Chap. 1006) the public easements in the street and the easements of light, air and access are extinguished in a discontinued road or street when the new street is opened.

The appellants take the position that the " Spuyten Duyvil Road " is legally " open " notwithstanding it has laid unworked and unfitted for public use for more than eleven years since the filing of the map laying out the same under the Laws of 1895 (Chap. 1006). This point was well considered by Mr. Justice SCOTT in his opinion handed down in the motion for a preliminary injunction, which was granted. (42 Misc. Rep. 301.) The learned judge said : " The word ' opened,' as used with reference to streets and public places in this city, has come to have a special technical meaning, recognized in many statutes, as referring to the time when the city becomes vested with the title to the land upon which the street or avenue is to run. I do not think, however, that it can be held to have been used in that sense in the act referred to." (Laws of 1895, ch. 1006.) " The purpose of the act was to substitute one system of public highways for another by opening new

streets and closing old ones. It certainly was not intended to physically close the streets of one system without providing something to take their places. The whole scheme was one of substitution. * * * Such intention will be carried into effect if the word 'opened,' in the clause providing that in certain cases an old street shall not be interfered with until the new street has been opened, is construed in its popular sense as meaning actually opened so that it can be used. Any other construction of the statute might work, and in the case at bar would work, great hardship which could not ordinarily be compensated for in damages, since the commissioners of estimate would have no means of foretelling how long the public authorities would delay the actual physical opening of the new street."

This court has recently construed the statute under consideration in *Matter of City of New York* (192 N. Y. 459). At page 468 Judge WERNER states: " When the public easement in the avenue was legally abandoned (L. 1895, ch. 1006, § 2) the owner of the fee regained complete possession thereof freed from the public easement. * * * The learned counsel for the cemetery association claims that the new avenue was legally opened when the title to the land taken for that purpose became vested in the city, and that was long prior to the actual physical opening of the new avenue. * * * We are inclined to the view that the word 'opened,' as used in the statute, means the actual physical opening of the avenue. Any other construction might lead to ·the destruction of the rights of the public in its highways or streets before the improvements by which they are to be changed could be open for public use."

We are of opinion that until such time as the "Spuyten Duyvil Road" shall be "physically opened and capable of public use," the defendants are properly prohibited from closing or fencing the roadbed in front of their premises.

This brings us to the second form of relief granted to the plaintiff by the courts below. The defendants were forever restrained and enjoined by the judgment from inclosing,

using or occupying the portion of the roadbed of the "Old Kingsbridge Road" in front of premises described as belonging to them in such a way as to preclude the plaintiff from the exercise of its private easement of right of way adjudged to be appurtenant to the premises belonging to it, or so as to interfere with the plaintiff's use of the said roadbed, or such use of the said roadbed by its officers, agents, employees, servants, vehicles, conveyances and trucks as may be reasonably necessary to the carrying on of its business. These restraining provisions of the judgment will become actively operative when the "Spuyten Duyvil Road" is actually opened and used by the public, and at the same time the "Old Kingsbridge Road" will in fact as well as in law be closed, thus permitting the fee of the roadbed to revert, so far as this litigation is concerned, to the plaintiff and defendants, subject to the provisions of the partition deed of 1865.

The argument of the defendants and appellants briefly stated is that the opening of the "Spuyten Duyvil Road" and the closing of the "Old Kingsbridge Road" operated to extinguish not only plaintiff's public easements in the latter road, including the easements of light, air and access, but carried with it the plaintiff's easement by grant under the partition deed.

The sole question remaining is as to the effect the laying out of the new street and discontinuing the old one has upon the easement by grant. We are of opinion that the contention that this easement was thereby extinguished is contrary to principal and authority. We have a situation presented here different in some respects from any of the reported cases called to our attention. There is no contest here between grantor and grantee, or their successors in the title, nor are there parties before us in any relation where they are making conflicting claims to the fee of the same premises. The plaintiff and the defendants, through their respective predecessors in interest, are grantees of the same partition deed, already referred to in detail, and stand before the court

clothed with such rights as that conveyance confers upon them. The predecessors in interest of the respective parties were the owners in fee of the bed of so much of the " Old Kingsbridge Road " as is involved in this controversy. Prior to the execution of the partition deed they had laid out as tenants in common a road for the use of said property, as has been already pointed out. The private easement under this grant was for the benefit, not only of the plaintiff, but of these defendants. There is no real conflict of interest between the parties to this action. Each is vested with an easement by grant to a distinct right of way out, upon and over the roadbed of the " Old Kingsbridge Road."

The extinguishment of public easements and easements of light, air and access, which is effected by the legal opening of a highway, or the construction of an elevated or surface railroad, is due to the public necessities of the situation and property owners are duly compensated therefor. This ordinary adjustment of the rights between the public and the citizen has no application to the situation now presented. It would seem to go without saying that an easement by grant is not to be distinguished from a deed conveying the fee, and can only be acquired by condemnation or conveyance.

This doctrine was enunciated in the case of *Holloway* v. *Southmayd* (139 N. Y. 390), wherein a state of facts was presented by no means so clear and convincing as those in the case at bar. The contest in that case grew out of the closing of the Bloomingdale road. This road was opened as a public highway in 1707, the fee of the same remaining in the abutting owners. In 1799, Apthorp and others conveyed a certain tract of land abutting on the Bloomingdale road to Clarkson, in which conveyance the description began on the north side of the Bloomingdale road and running along the same; the grantors included in this conveyance all the easements, privileges, advantages and appurtenances belonging or in any wise appertaining to the land. The plaintiff Holloway is a descendant of the original grantor, and he claimed that by inheritance he was entitled to and seized in fee of a certain

portion of the land formerly within the lines of the Bloomingdale road. Holloway brought an action of ejectment as a successor in interest to the fee in the road against the successors in interest to the lot conveyed, on the ground that the Laws of 1867 (Chapter 697), which closed the Bloomingdale road to the public, gave to the plaintiff the right to use the fee in the street free from any private or public easements.

The court stated, Judge GRAY writing, at page 410, as follows: "The appellant further contends that these special easements, if acquired by the abutting owner, were lawfully extinguished and condemned, as the result of the proceedings had under the act of 1867; providing for the closing of the Bloomingdale road. In that he is mistaken. The purpose and the effect of that act, it is plain from its language, were to discontinue the road as a public highway and, in so doing, to extinguish the public easement. The legislature was not concerned with private easements and rights in the land covered by the public highway. Its action left these private interests as they were; the public had no interest in their destruction."

The court also stated at page 402 as follows: "That private easements may be appurtenant to the property abutting upon a public highway must be conceded. These easements of the abutting landowner are in addition to such as he possesses as one of the public, to whose use the property has been subjected. They are independent of the public easement and, whether arising through express or implied grant, are as indestructible, in their nature, by the acts of the public authorities, or of the grantor of the premises, as is the estate, which is the subject of the grant." The judgment was affirmed and the defendants respondents were held entitled to the perpetual enjoyment of the easements in and over the land, involved in the litigation, located within the boundaries of the Bloomingdale road which had been closed.

We are of the opinion that the plaintiff has not been divested of its easement by grant acquired under the partition deed, and that the defendants were properly enjoined from

inclosing or fencing in the land in front of their property which forms a part of the roadbed of the " Old Kingsbridge Road."

The judgment of the Appellate Division should be in all things affirmed, with costs to the plaintiff respondent.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HISCOCK, and CHASE, JJ., concur; GRAY, J., absent.

Judgment affirmed.