(153 App. Div. 164.)

In re AVENUE BETWEEN FT. WASHINGTON AND HAVEN AVES. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.  November 15, 1912.)

1. EVIDENCE ( 82*)—PRESUMPTIONS—EMINENT DOMAIN—ASSESSMENTS.

On review in an eminent domain proceeding, it will be presumed that commissioners in another proceeding to open a street made only such awards as the law required.

[Ed. Note.—For other case, see Evidence, Cent. Dig. §§ 215–219; Dec. Dig. § 82.*]

2. EMINENT DOMAIN (§ 147*)—COMPENSATION—EASEMENTS OF NONABUTTING OWNERS.

Awards to the nonabutting owners of easements of way in part of an old road, condemned and taken for a new street, should be based on the difference between the value of the easements and the right of the owners to use the street in common with the public thereafter.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 394–396; Dec. Dig. § 147.*]

3. EMINENT DOMAIN (§ 131*)—COMPENSATION—FEE SUBJECT TO EASEMENT.

Where the fee in land subject to private easements of way is taken for a public avenue, the owners of the fee are entitled to the value of the fee subject to such easements.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 353; Dec. Dig. § 131.*]

4. EMINENT DOMAIN (§ 149*)—AMOUNT OF COMPENSATION — EXTINGUISHED EASEMENTS.

On the theory that private easements of way owned by nonabutting owners in land taken for a public street are extinguished, such owners, while entitled to awards of at least nominal damages, would not be entitled to substantial damages, since it will be presumed that the city intends to use the street perpetually for street purposes, making the possibility of its discontinuance too remote to sustain a substantial award.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 327–331, 401; Dec. Dig. § 149.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. EMINENT DOMAIN (§ 237*)—ASSESSMENT BY COMMISSIONERS—REVIEW—CONFIRMATION OF REPORT.

Where no necessity is shown in a proceeding to open a public street for any condemnation of nonabutting owners' private easements of way therein, a commissioners' report without any award to such owners should be confirmed, since that leaves them better protected against any future claim that their private easements have been extinguished.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604–613; Dec. Dig. § 237.*]

6. EMINENT DOMAIN (§ 85*)—COMPENSATION—PROPERTY TAKEN—EASEMENTS OF NONABUTTING OWNERS.

In a proceeding to open a public avenue and to cut off such property rights as precluded the general public from enjoying a right of way over the land similar to that possessed by nonabutting owners of expressly granted private easements of way over such land, where the city does not acquire the fee simple absolute, and where it is not necessary that such private easements be acquired, they are not and cannot be acquired, but remain dormant, so that, should the street be discontinued as a public street, they survive as a burden on the fee; and hence such owners are entitled to no compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 221–226; Dec. Dig. § 85.*]

Appeal from Special Term, New York County.

In the matter of the application of the City of New York as to a new avenue between Ft. Washington and Haven avenues, etc. From so much of an order of the Special Term, confirming in part the report of the commissioners of estimate herein as sustains the objections of Mary Cowan and others to said report, relating to the failure to award them damages for the taking of their easements as nonabutting owners, and directs the commissioners of estimate to make awards therefor, and returns said report to said commissioners as to the parcels in which said easements are claimed, and as to parcels owned by the Ft. Washington Syndicate, and from so much of said order as returns the report as to assessments for benefit to the commissioner of assessment for further consideration, the city of New York and the Ft. Washington Syndicate separately appeal. Order reversed, and motion to confirm report granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Joel J. Squier, of New York City (Charles A. Molloy, of New York City, on the brief), for appellant City of New York.

Henry W. Simpson, of New York City, for appellant Ft. Washington Syndicate.

Benno Lewinson, of New York City, for respondents.

LAUGHLIN, J. This proceeding was instituted by the city of New York to acquire the lands necessary to lay out a new avenue 60 feet in width from the northerly line of West 177th street to a point about 434 feet north of the northerly line of West 181st street, between Ft. Washington and Haven avenues. The respondents severally own parcels of land fronting on Northern avenue, some distance north of West 181st street, and they have separate easements by grant over

part of the premises acquired by this proceeding south of West 181st street. These easements had their origin in conveyances made to the respondents' predecessors in title by John A. Haven and Gurdon Buck, who, before executing such conveyances, were joint owners of a large tract of land bounded on the north by a line about 600 feet north of the present West 181st street at Riverside Drive, and about 380 feet north of that street at Kingsbridge Road (now Broadway), on the east by Kingsbridge Road, on the south by the present 178th street, and on the west by the Hudson river, and who had in the summer of 1836 prepared a map of this tract of land, showing three private roads, and showing it divided into 21 parcels, each abutting on one or more of the roads, which map they filed in the office of the register of the county of New York on the 14th day of November, 1836. One of these roads was Northern avenue, and is included within the lines of the present Northern avenue. Another was Southern avenue. The third, designated "Road," extended from the southwesterly corner of the tract at the Hudson river, by a very irregular course, across the tract to Kingsbridge Road. Northern avenue intersected it on the north at a point in the bed of the present West 181st street, and from that point southerly it curved to the southeast, and in the bed of the new avenue taken by this proceeding, which is, generally speaking, parallel with, and easterly of, Northern avenue, it ran nearly directly south to a point in the bed of the present West 180th street, where it curved to the east.

The conveyances from the original and intermediate owners are not set out in the record; but it has been assumed, and is conceded, that they all contained a provision with respect to these easements in legal effect the same as those contained in the immediate deeds to the respondents. The deeds to respondents Cowan and Autenrieth contain a provision as follows:

"Together with all the right, title, and interest of the Four-in-Hand Club, in common with one Gurdon Buck, his heirs and assigns, and the said John A. Haven, his heirs and assigns, to the free use * * * of that certain dock and three certain private roads heretofore made by the said John A. Haven and Gurdon Buck on their lands at Ft. Washington for their individual accommodation, viz.: The first of said private roads extending from the aforesaid dock made by the said John A. Haven and Gurdon Buck at the Hudson river to the Kingsbridge Road, and designated upon the said map by the word 'Road'; the second of said private roads being designated upon said map by the words 'Northern Avenue,' and the third of said private roads being designated upon the said map by the words 'Southern Avenue.'"

And the deed to respondent Busch contained the following:

"Also the right of way and free use to the party of the second part, his heirs and assigns, forever, in common with others having the same privilege, to the dock and road marked 'Dock' and 'Road' on said map, and also over so much of the Northern avenue marked on said map 'Northern Avenue' as extends to the northerly line of the premises hereby conveyed. * * * *"

None of the respondents owns any parcel of land abutting on the part of the old road taken in this proceeding. The only basis upon which they claim to be entitled to an award of damages in this proceeding is their easements by grant in that part of the old road taken for the new avenue.

West 181st street was opened by the city from Broadway to Riverside Drive in 1897; West 180th street from Broadway to Buena Vista avenue (which includes part of Southern avenue) in 1904; and Northern avenue, which, as already stated, embraces within its lines the Northern avenue laid out on said map by the original owners, from West 181st street to a point about 770 feet north of said street in 1905. Ingress and egress to and from the lands owned by the respondents to Broadway—formerly Kingsbridge Road—is now had over Northern avenue and West 181st street. At the time this proceeding was instituted, the lands within the lines of the new avenue in the block between West 180th street and West 181st street were, so far as they embraced said old road, subject to the easements of the grantees of said John A. Haven and Gurdon Buck throughout this tract of land; but to the north West 181st street was open and improved, and to the south West 180th street was likewise open and improved as a public street. In acquiring the land for West 181st street, awards were made to unknown owners, on account of their interest in that part thereof within the lines of said old road, and it appears that the respondents subsequently applied to the court, and were allowed to participate with others in those awards.

The learned counsel for the Ft. Washington Syndicate contends that the physical opening of West 181st street, West 180th street and Northern avenue extinguished the respondents' easements, and that they were compensated therefor in the proceeding to open West 181st street, prior to the time title to the new avenue vested in the city. The learned counsel for the city does not agree in this contention, but agrees with the respondents that their easements in the premises in question remained unaffected.

[1, 2] It must be presumed that the commissioners in the proceeding to open West 181st street made only such awards as the law required. Matter of Walton Avenue, 131 App. Div. 710, 116 N. Y. Supp. 471, affirmed 197 N. Y. 518, 90 N. E. 59. No awards were made directly to the respondents in that proceeding, and, if awards were therein made for their easements, such awards were not sought by them, and they made no claim or proof with respect thereto; but if the awards, in which they subsequently participated, embraced awards for those easements, they should have been based on the difference between the value of the private easements under said grants and the right of the owners of the easements to use the street in common with the public thereafter. The city did not in that proceeding acquire the right to exclude the respondents from having egress and ingress over the former right of way, and therefore the continuity of their easements remained practically unaffected, even though technically destroyed.

[3] The Ft. Washington Syndicate owns the fee of that part of the land acquired in which the respondents have easements, and it has been awarded only the value of the fee subject to the easements. It now asks that the report of the commissioners of estimate should be sent back to them, or to new commissioners, with directions to make awards for said fee unburdened with any easements. The order

of the Special Term, however, instead of confirming the awards to the fee owner, referred the report back to the commissioners to reconsider their action in making awards with respect to the parcels in question. The fee owner in this respect is asking for relief which has been granted in part by the order from which it appeals. Other grounds control the decision of the appeal, and we need not decide whether, if the order were to be affirmed, it could or should be modified by a binding direction to the commissioners as requested.

The learned counsel for the city contends that the report should have been confirmed with respect to the awards to the owner of the fee, and we agree with that contention. The theory on which the owner of the fee bases this claim is that the easements have been extinguished by the condemnation of the easements in *another* part of the "Road" as stated. That may have affected the value of the easements, but I fail to see any theory upon which it can be said that they have been extinguished or have reverted to the owner of the fee. The respondents claimed before the commissioners that they were entitled to awards representing the value of the easements, which was excluded from the awards made to the owner of the fee. The commissioners ruled otherwise, but the learned justice at Special Term sustained this contention, and on that ground referred the matter back to the commissioners.

The learned counsel for the city contends that the respondents are not entitled to awards, for the reason that their easements were merged in the title acquired by the city which was the fee in trust for street purposes. We have examined the authorities cited in support of that contention, and are of opinion that they do not sustain it. One of these authorities (Matter of Adams, 141 N. Y. 297, 36 N. E. 318) held that where land was conveyed subject to a private easement for highway purposes, and the public easement in the land was subsequently taken for street purposes, the grantor was only entitled to an award for the value of the public easement taken, less the value of the private easement created by his conveyance, and that such damages were only nominal, for the reason stated by Judge Finch in Village of Olean v. Steyner, 135 N. Y. 341, 32 N. E. 9, 17 L. R. A. 640, as follows:

"The real burden is in no manner increased by absorbing the private in the public right, or substituting the latter in the room and stead of the former, since as burdens on the land they are substantially identical."

Another case cited (Matter of City of New York, 196 N. Y. 286, 89 N. E. 829, 37 L. R. A. [N. S.] 281) was a proceeding to acquire the fee to lands upon which a street had been laid out and used. The owner had retained the fee, and had conveyed parcels on either side of the street, by deeds giving the grantees easements therein. The commissioners made a substantial award to unknown owners. It was subsequently ordered paid to the abutting owners. The only point decided was that neither the owner of the fee nor the owners of the private easements was entitled to more than nominal damages. The court did not decide, or express an opinion, that the private easements merged in the public easement, although it was the case of an abutting

owner, but held that by operation of law the abutting owners had all or more than they had received by the grant, for the reason that their easements of light, air, and access had not been interrupted or impaired. In Matter of Schneider, 199 N. Y. 581, 92 N. E. 791, the court merely followed the decision in Matter of City of New York, supra, and applied it to facts not stated, but assumed to be the same. In Matter of 116th Street, 1 App. Div. 436, 37 N. Y. Supp. 508, it was held that an abutting owner, having only a private easement for street purposes in land, the fee of which was taken by the city for public street purposes, was not entitled to an award, and the reason assigned therefor in the opinion delivered by Mr. Justice Ingraham is concisely stated as follows:

"After it is thus taken and maintained by the public authorities, the abutting owner's easement still remains unimpaired. He has all the right in the road or highway that he had before enjoyed, and no property of his is taken by the proceeding."

It has been held that a private easement by implication in a grant survives the discontinuance of public easements for street purposes acquired by accepting a subsequent dedication (White's Bank of Buffalo v. Nichols, 64 N. Y. 65); and in Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052, it was held that after public easements for street purposes had been acquired the owner of the fee could still grant private easements in the public street, which survived its legal discontinuance and closing.

[4] If, however, it be the effect of the three decisions on which the city relies that private easements of abutting owners are taken, and public easements substituted therefor, that rule would not apply to respondents, who are not abutting owners. If their private easements are taken, they have no further *easements* in the street; and doubtless to extinguish their private easements it would be necessary to make an award of at least nominal damages. If no award is made to them in this proceeding, therefore, it must be upon the theory that their easements are not taken. If they are entitled to any award, an award for substantial damages could not in any view of the case be sustained. It would have to be presumed that the city has acquired this avenue in good faith, and intends to improve it and to use it for all time for public street purposes. The possibility of a discontinuance of the avenue by the statutory consent of abutting owners, or otherwise, is so remote and improbable that, if the matter were remitted to the commissioners upon the theory that the respondents are entitled to some award, no award for more than nominal damages could be sustained.

[5] It would seem, therefore, that there is no propriety, even on the theory that the respondents' easements could be taken in this proceeding, of remitting the matter to the commissioners to make a nominal award. If we confirm the report without any award to the respondents, they will be better protected against any claim in the future that their private easements have been extinguished, and since there is no necessity at this time for condemning these private easements that course should be taken.

[6] I am of opinion, however, that the private easements of the respondents are not, and could not be, acquired in this proceeding, which is merely to cut off such property rights and interests as preclude the general public from enjoying a right of way over the land in question similar to that enjoyed by the respondents, and from improving and maintaining it as an open public avenue. It is not essential to the enjoyment of the public rights sought to be acquired that the private easements of respondents be condemned. The city has not acquired the fee simple absolute. It may not build upon the land, or appropriate it to any use inconsistent with its use for public street purposes. The city will improve and look after the avenue as it cares for the other public avenues and streets, and the respondents will be permitted to enjoy a better way than they had under their private grants. Should the avenue be discontinued as a public street at any time in the future, I see no reason why the easements of the respondents will not survive, and whoever acquires the fee, which has now been acquired *for public street purposes only,* will take the same burdened with these easements.

If the easements of the respondents merged in the public easement, I am of opinion, for the reason already assigned, that they would be extinguished, unless by merger is meant that their easements will remain dormant, while the public easement which they will enjoy in common with the public exists, in which sense the theory may be sound. I am of opinion that White's Bank of Buffalo v. Nichols, supra, and Holloway v. Southmayd, supra, and Matter of 116th St., supra, tend to support these views and that there is other authority therefor. It has been held by this court in Matter of 168th Street, 28 App. Div. 151, 52 N. Y. Supp. 588, affirmed by the Court of Appeals, on the opinion delivered here, 157 N. Y. 409, 52 N. E. 1126, that a proceeding to discontinue a street is the reverse of a proceeding to open a street. It has been held by the Court of Appeals in Johnson & Co. v. Cox, 196 N. Y. 110, 89 N. E. 454, that no award for private easements could be made in proceedings had pursuant to the provisions of chapter 1006 of the Laws of 1895, incident to closing a public street. That case arose over the closing of Kingsbridge Road, which had been acquired for public street purposes by user; the fee remaining in the abutting owners subject to private easements of access of all abutting owners created by a partition deed. The defendants in that action, who owned the fee of the part of the street upon which their property abutted, proceeded upon the theory that, by virtue of the proceedings had pursuant to the provisions of said chapter 1006 of the Laws of 1895, the street had become legally closed, and that they were entitled to fence the same in, as expressly authorized by section 2 of said statute. Johnson & Co., one of the owners of the easement, brought an action for an injunction to enjoin such fencing in, and asserted the continued existence of its right of way under the grant. It was contended by the defendants that the remedy of Johnson & Co. was to obtain, pursuant to the provisions of said statute, compensation for the closing; but it was expressly held by the Court of Appeals, in an opinion evidently delivered

with great deliberation, that private easements could not be acquired under the statute on closing a public street.

In Matter of Mayor, etc., of N. Y., Vanderbilt Ave., 95 App. Div. 533, 88 N. Y. Supp. 769, followed in Matter of Mayor, etc., of N. Y., Opening of Vanderbilt Ave., 119 App. Div. 882, 104 N. Y. Supp. 1133, affirmed 189 N. Y. 551, 82 N. E. 1133, it was distinctly held by this court that it was the intention of the Legislature, by the provisions of said chapter 1006 of the Laws of 1895, to authorize the condemnation and extinguishment of all easements, both public and private—that is to say, the rights of the abutting owner merely by virtue of his ownership on a public street (see Lahr v. Met. El. R. Co., 104 N. Y. 268, 10 N. E. 528, and Holloway v. Southmayd, supra), and any easement he might have by private grant—when a public street was discontinued and closed, and this ruling was emphasized by a dissenting opinion by Mr. Justice Ingraham on the first appeal to this court, and a dissenting opinion by him on the second appeal, concurred in by Mr. Justice Clarke. In that case the award was made for closing the avenue to an abutting owner who did not own the fee of the street, and solely for a private easement by grant to use the street for ingress and egress. This court decided that the statute of limitations had run against the abutting owner's claim for damages on account of the discontinuance of the public easement, but had not run against a claim for damages for his private easements by grant, which the Legislature subsequently by virtue of said statute, as we construed it, declared extinguished and authorized damages therefor. The order of this court, remitting the matter to the commissioners to make the award, contains the following:

"Ordered and adjudged that the order appealed from be modified, by denying the motion of the appellant so far as it relates *to any damages which she lost by the discontinuance of the said street as a public highway,* but granting it as to damages which she may have sustained by the destruction of her private easements, and, as so modified, the said order is affirmed, without costs."

The report of the commissioners, showing the basis upon which they awarded $2,000 for such private easements, contains the following:

"For damages to the said premises by reason of the extinguishment and destruction of all private easements appurtenant to said premises, whether created by private grant or otherwise, over that part of old Quarry road which lies between the said premises and East 178th street, between Webster avenue and Vanderbilt Avenue West."

The Court of Appeals affirmed the order confirming that award without opinion. That decision is cited in the later decision of Johnson & Co. v. Cox, supra, as if it related to easements of light, air, and access incident to ownership of land abutting on a public street, which was not the case, and while it is to be presumed that, if it had been intended to overrule the earlier case, it would have been so stated in the opinion, yet it is difficult to perceive the theory upon which a private easement by grant, existing at the time a street is closed, is extinguished if it exists as to that part of the closed street

which is directly in front of the lands to which it is appurtenant, but not, if the abutting owner owns the fee in front of his land and has a private easement over the rest of the street, which is closed.

In Matter of Walton Avenue, supra, we construed the decision of the Court of Appeals in Matter of Mayor, etc., of N. Y., Opening Vanderbilt Avenue, supra, as authoritatively adjudicating that all easements, public and private, are extinguished when a street is closed pursuant to the provisions of said chapter 1006 of the Laws of 1895. Assuming that those decisions are to be deemed to be consistent, and both stand as the law, then it appears that the Court of Appeals has drawn a distinction between private easements owned by an abutting owner, immediately in front of or adjacent to his premises, in a public street, and those owned by him in other parts of the street, when he happens to own the fee in the public street in front of his premises, and that the former are extinguished when the street is closed, but the latter are not. However this may be, it seems to me quite clear that, if the private easements of an owner abutting on a public street closed, in other parts of the street than those directly in front of his premises, are not extinguished when the street is, then surely the private easements of an owner, whose land does not abut on any part of the street closed, would not be extinguished by the closing of the street. If, as was held in Johnson & Co. v. Cox, supra, and Holloway v. Southmayd, supra, the public, on discontinuing or closing a street, are not interested in extinguishing private easements, so that the street may be physically closed, it would seem to follow that, on acquiring even the fee to land *for public street purposes,* the public are not interested in condemning private easements of right of way which are consistent with the use to which the land is to be devoted for public purposes. In the case at bar, it is not essential to the enjoyment of the public rights that the private easements of the respondents in part of the premises acquired should be extinguished, for the respondents may continue to enjoy them, without other interruption than such as is incident to the improvement of the public street, which presumably will inure to their benefit, as well as to the benefit of the public.

Two parcels not affected by the easements are owned by the Ft. Washington Syndicate, and the awards made therefor have likewise been returned to the commissioners. No reason for not confirming those awards is disclosed by the record, and no argument has been made with respect thereto.

It follows that the order should be reversed, with $10 costs and disbursements, and motion to confirm the report of the commissioners granted, with $10 costs. All concur.