(160 App. Div. 80)

### In re GRAND BOULEVARD IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 9, 1914.)

EMINENT DOMAIN (§ 149*)—COMPENSATION—FEE SUBJECT TO EASEMENT.

    The conveyance of lots according to a filed private map, showing a street thereon, creates private easements of light, air, and access over the land shown as a street, which are not extinguished by the discontinuance of the street after its subsequent establishment; so that the owner of the fee of the street, on it being later condemned for a street, is entitled to only nominal damages.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 327–331, 401; Dec. Dig. § 149.*]

Appeal from Special Term, New York County.

In the matter of the application of the City of New York to ac-

quire title to land for the Grand Boulevard and Concourse. From an order confirming the report of commissioners of estimate and assessment, Louis Lowenstein and another and the City of New York appeal. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Harold Swain, of New York City, for appellants.

John J. Kearney, of New York City, for respondent City of New York.

Benjamin Trapnell, of New York City, for respondent Hansen.

Edward H. Hawke, Jr., of New York City, for respondent Dalton.

Ernest Hall, of New York City, for respondent Steeves.

SCOTT, J. The appellants Lowenstein are the owners in fee of two parcels of land taken in this proceeding and known on the Commissioners' Map as damage parcels 12A and 19A. These two parcels of land formerly lay within the lines of two streets known as Butternut street and Pond place, where were discontinued by act of the public authorities. For these parcels said appellants have been awarded nominal damages only, upon the theory that, although discontinued and closed as public streets, they are still subject to private easements in favor of the owners of property abutting upon the said streets. The city of New York appeals against the substantial awards made to such abutting owners because such awards were made upon the theory that this abutting property still enjoyed rights in the nature of private easements over the lands now owned by appellants Lowenstein and formerly comprising the beds of the streets known as Butternut street and Pond place, whereas, as it is claimed, if it be determined that no such rights have survived the closing and discontinuance of such streets as public streets, then the awards to the abutting owners are made upon an erroneous theory and are excessive.

Butternut street and Pond place were first shown on a map filed in the Westchester county clerk's office on May 16, 1853, entitled:

"Map of West Morrisania. Being part of the farm of W. H. Morris, Esq., in the town of West Farms, county of Westchester, New York."

This was a private map showing a tract of land laid out with streets and avenues and subdivided into lots. On a map filed by the commissioners of the town of Morrisania on February 17, 1871, those portions of Butternut street and Pond place affected by this proceeding were shown as discontinued, but on February 28, 1879, the commissioners of the department of public parks filed a map, pursuant to chapter 604 of the Laws of 1874, upon which Butternut street and Pond place were shown (although not by the same names) as part of the street system thereby established. It is not disputed that this constituted an effective acceptance of the attempted dedication of these streets evidenced by the Morris Map, and that they thereupon became legally established public streets. They were omitted, however, on the final map filed November 2, 1895, by the commissioners of street improvements of the Twenty-Third and Twenty-Fourth wards and

thereby became discontinued as public streets within the purview of the street closing act (chapter 1006, Laws 1895). The block within which the parcels affected by this proceeding were included on said last-mentioned map were bounded on one side by Walton avenue, a new street, which was physically opened October 18, 1898. At that date Butternut street and Pond place became finally closed and discontinued as public streets, and the owner in fee of the land or soil within the boundaries thereof might inclose and use and occupy the same as fully as if the same had not been laid out, dedicated, established, or used as a public street. Section 2, c. 1006, Laws 1895; Matter of City of New York, Walton Ave., 131 App. Div. 696, at page 721, 116 N. Y. Supp. 471, affirmed 197 N. Y. 518, 90 N. E. 59.

In 1906 the public authorities of the city of New York determined to reacquire the property included in this proceeding for another public improvement.

There is no doubt that upon the final effectual closing and discontinuances of Butternut street and Pond place on October 18, 1898, certain easements theretofore appurtenant to the abutting property and constituting a servitude upon the land included within the discontinued streets were destroyed and obliterated, and that thereafter the owners in fee of the bed of these streets hold them freed from the incumbrance of those easements. The easements thus destroyed include those which arise from the fact that a plot of land abuts upon a public street, and are thus described in Woodruff v. Paddock, 130 N. Y. 618, 625, 29 N. E. 1021, 1022:

"An abutting owner has two distinct kinds of rights in a highway or street —a public one which he enjoys in common with all other citizens, and certain private rights, which arise from his ownership of property contiguous to the highway or street. These special rights increase the value of his abutting premises, are private property, and, if they are destroyed or greatly injured without due process of law, damages may be recovered for the injury."

This second class of special rights, frequently called private easements owned by each abutting owner in his own right, result from the mere circumstance of contiguity, do not rest in grant and are necessarily abolished when the contiguity to the highway is destroyed by the destruction of the highway itself, and it is immaterial whether the fee title to the bed of the highway is held by the municipality, or by the abutting owner. It is easements of this description which are, in most if not all of the reported cases, referred to as "private easements" where it is held that the effect of the street closing act of 1895 is to destroy all easements, both public and private, in a discontinued street. This is well illustrated in Matter of Mayor, Vanderbilt Avenue West, 95 App. Div. 533, 88 N. Y. Supp. 769; Id., 119 App. Div. 882, 104 N. Y. Supp. 1133; Id., 189 N. Y. 551, 82 N. E. 1133. There remains, however, another class of private easements, created by grant implied or expressed, which have no necessary relation to the street as a public highway, with the extinguishment or continuance of which the public commonly has no interest, which existed in many cases before the public highway was established as such, and which survive its discontinuance as a public highway. These are

not destroyed or extinguished by the closing of a street under the Street Closing Act of 1895. Johnson v. Cox, 196 N. Y. 110, 89 N. E. 454; Matter of City of New York, 153 App. Div. 164, 138 N. Y. Supp. 107. This question has recently been so carefully and thoroughly discussed by Mr. Justice Laughlin in the case last cited that it is unnecessary·to attempt a rediscussion.

As has been said Butternut street and Pond place were first shown on a private map filed in 1853. The property owned by the appellants Lowenstein constituted a part of said streets shown on that map. Damage parcels Nos. 16, 17, and 18, concerning which the city of New York appeals against the award, formed parts of lots 374 and 375 as shown on the Morris Map. These lots were conveyed by William H. Morris and his wife to Dennis McMahon, and by him and his wife to Lorenz Weiher, and by him to the appellants Lowenstein by deeds wherein the property conveyed was described by reference to the Morris Map, and was bounded by Butternut street and Pond place as shown on said map. It is under this last-mentioned deed that the appellants Lowenstein claim title to the parcels which formerly lay within the lines of . Butternut street and Pond place, for when they came to convey to others they did so by a description which included so much of the property as abutted upon Butternut street and Pond place reserving, by exclusion from the description, so much of the property owned by them as lay within the lines of said streets. It is not questioned that the filing of the Morris Map, and the subsequent conveyance with express reference to it, created private easements for light, air, and access over the lands shown on the map as Butternut street and Pond place. These easements existed without reference to the subsequent establishment and discontinuance of these streets as public streets, and survive the closing under the act of 1895 (Johnson v. Cox, supra), and are appurtenant not only to the abutting property directly opposite the land of appellants Lowenstein, but to all property abutting upon said streets, at least within the limits of one block (Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573). The result is that the defendants Lowenstein hold their property freed from all public street easements, and from those special easements, sometimes called private easements, of light, air, and access which appertain to abutting property solely because of its contiguity to a highway, but still subject. to the essentially private easements resting in the grant implied in the deeds under which they claim. The theory upon which the commissioners made the award was therefore the correct one. It follows that the land belonging to the appellants Lowenstein, although owned in fee, was so incumbered with easements in favor of the owners of land abutting thereon that there was left to them nothing but a naked, barren fee for which a nominal award was properly made. Matter of Schneider, 136 App. Div. 444, 121 N. Y. Supp. 9; Matter of City of New York, Carroll St., 137 App. Div. 39, 121 N. Y. Supp. 435; Matter of City of New York, Decatur St., 196 N. Y. 286, 89 N. E. 829, 37 L. R. A. (N. S.) 281; Mat-

ter of City of New York, Johnson Ave, 135 App. Div. 630, 120 N. Y. Supp. 798, affirmed 198 N. Y. 505, 92 N. E. 1087.

It is objected that this award results in hardship because the appellants could probably have obtained releases for a very slight consideration and also because their property has been heavily taxed and assessed. The answer to the first objection is that, whatever they might have done, they did not in fact obtain releases. The answer to the second objection is that if they had taken the proper steps they could have avoided both taxation and assessment. People ex rel. Topping v. Purdy, 143 App. Div. 389, 128 N. Y. Supp. 569, affirmed 202 N. Y. 550, 95 N. E. 1137.

As we understand the position of the corporation counsel, he is not disposed to press his appeal against the awards for damage parcels Nos. 14, 15, 16, 17, and 18 if the theory upon which the nominal awards to appellants Lowenstein were made is upheld.

The order appealed from must therefore be affirmed, with $10 costs and disbursements to respondent city of New York as against the appellants Lowenstein, and with $10 costs and disbursements to the respondent owners of damage parcels 14 to 18, inclusive, against appellant the city of New York. All concur.